# **EXHIBIT E**

**SHERMAN LAW**

August 15, 2022

BY EMAIL: ahni.n.malachi@hrc.nh.gov and
sarah.e.burkecohen@hrc.nh.gov

RE:   Tia Lyles-Williams v. Lonza Biologics.
      NHCHR EARCG 0117-19; EEOC 16D-2019-00061
      Plaintiffs' Conciliation Statement – HUM 211

Dear Executive Director Malachi:

The following is Ms. Tia Lyles-Williams' ("Ms. Lyles-Williams") conciliation statement.

### *Brief Summary*

This Commission found that "the overall culture and standard of behavior" at Lonza caused Ms. Lyles-Williams to experience discrimination. She lost opportunity, earnings, and career advancement. This caused emotional and physical injury.

She is reminded of this every time she has to identify her employment history. She must decide whether to include Lonza in her background. If so, she has to explain being subjected to workplace discrimination. If she omits Lonza, she has to explain a fourteen month gap in employment. Either way, she is less desirable in a competitive job market. This harm is Lonza's fault.

I.   **RELEVANT FACTS**

### *Personal Identification*

Ms. Lyles-Williams is a highly educated and accomplished scientist and bio-pharmaceutical engineer.

She is a thirty-eight (38) year-old single woman of African-American descent with a non-binary gender presentation.

### *Discrimination Before Even Hired – Lower Job*

Although she did not know it at the time, she was discriminated against when hired. She applied for one position, Manufacturing Manager (grade 12), but was then informed that Lonza "filled"

Lyles-Williams Conciliation Statement
Page 2 of 7
August 15, 2022

that position so it considered her for a lesser position, Manufacturing Supervisor (grade 11).

### *Responsibility of Higher Job, Not the Pay*

After joining Lonza, she was assigned additional job responsibilities that mirrored those of the Manufacturing Manager position.  Lonza did not, however, give her title or salary.

### *Comments about Her Age. . . .*

She heard comments from supervisory personnel about her (a) age including one who referred to her as "young miss, Tia."

### *Sex/Gender/Race Based Assessments*

She received a performance review that identified that she was not the "right fit" because the Company was "not ready for someone like you to be in a leadership position."  These comments were made, according to witnesses, because of how she "dressed" and "talked."  Another supervisor said that she did not "have the right presence," "dress right", or "talk right."

These are not-so-veiled references to both her race and non-binary gender presentation.

### *Beyond just comments*

It was not just comments.  She was excluded from discussions at meetings, discredited when she commented at meetings, and shunned socially in front of her colleagues – including by another engineer who refused to shake her hand.

### *Mindset*

The company's environment is reflected in the comment made by an HR business partner—someone responsible for its hiring practices—who said about African-American applicants for a position that "I don't know why they would come out this way, there is nothing for them here in [New Hampshire]."

### *No Diversity*

The systemic animus is reflected in the Company's demographics.  There was only one female in senior leadership and *no* African-Americans.

### *Terminations and Re-Assignments*

A host of terminations and re-assignments of individuals engaged in some of this conduct suggests that the Company knew of it, and the harm it was causing.

Lyles-Williams Conciliation Statement
Page 3 of 7
August 15, 2022

### *"Promotion" = Demotion*

Lonza then offered her the position for which she initially applied (but was denied), but at this point she was overqualified for it because she had been doing it, and more, for over a year.  This was *not* the "promotion" Lonza claimed.  To the contrary, because it required that she could not work remotely, it was actually a demotion and reflects discrimination.

### *New Boss, Same Treatment*

She then got a new boss who took over her responsibilities while also requiring that she be on-site 40 hours per week.  This was a dramatic change from her prior two supervisors each of whom allowed her to work from home.  On one occasion, she also was made to stand outside the nurse's office while awaiting a return to work clearance.

### *Written Warnings*

This supervisor then provided her a written warning and a Final Written warning associated with her use of a Company credit card on a business trip that was approved by a prior supervisor.  She provided supporting documentation to show that the trip was previously approved.  The Company did not change the warning.

### *Formal Complaint of Discrimination*

She filed a formal written complaint with the Company in August 2018.  The adverse treatment toward her escalated.

### *Investigation With Pre-Determined Outcome*

An investigation with an obviously desired outcome followed.

It is telling that her performance evaluations completed prior to this investigation do *not* reference many of the complaints about her alleged work that are documented in the witness interviews.

It also is clear that many of the characterizations of her by those interviewed, when considered a light most favorable to her, tend to support that an atmosphere of discrimination existed.

### *Constructive Discharge*

Unable to tolerate things further, Ms. Lyles-Williams resigned.  Thereafter, she was asked to meet with her supervisor who advised her that the Company investigated her complaint and concluded that there was no wrongdoing.  When doing so, the supervisor said that he was "close friends" with those involved and he "was sure that they did not mean anything by [their conduct]."

Lyles-Williams Conciliation Statement
Page 4 of 7
August 15, 2022

*Claims*

Ms. Lyles-Williams has alleged the following claims:

    I.      Discrimination Based on Race (Disparate Treatment)
    II.     Discrimination Based on Race (Harassment)
    III.    Discrimination Based on Sex (Disparate Treatment)
    IV.    Age Discrimination (omitted from analysis for conciliation)

**II.   LIABILITY**

Ms. Lyles-Williams alleges the following claims:

    **I.   Race Discrimination – Disparate Treatment**

Ms. Lyles-Williams was a member of a protected class as an African American.  She was qualified for the positions she held.  Her performance reviews show she performed well.  She experienced adverse employment actions, however, when Lonza gave her a lower job title, less pay, and failed to remediate the hostile treatment she endured.  It is evident from direct evidence, including witness testimony, that she was treated differently.  The defendant failed to address and remediate the differing and hostile treatment she endured.

    **II.   Race Discrimination -- Harassment**

Ms. Lyles-Williams was a member of a protected class as an African American.  She was subjected to harassing conduct specifically because of her race as evidenced by the comments about how she talked and dressed as well as the comments made by HR about African American applicants for employment at Lonza.  This affected the terms and conditions of her employment in that she was given a lower job title, less pay, and was subjected to hostile treatment.  This is attributable to the employer which knew what was occurring, allowed it to continue, and then reinforced it through the sham investigation.

    **III.   Gender Discrimination**

Ms. Lyles-Williams was a member of a protected class.  She was qualified for the positions she held.  Her performance reviews show she performed well.  She experienced adverse employment actions, however, when Lonza gave her a lower job title, less pay, and failed to remediate the hostile treatment she endured.  As this Commission noted, "there is sufficient evidence to demonstrate that the overall culture and standard of behavior within the Respondent's organization" supports a discrimination claim based on gender.

Lyles-Williams Conciliation Statement
Page 5 of 7
August 15, 2022

### III.    DAMAGES

Ms. Lyles-Williams is entitled to the following damages:

#### A.    Back Pay/Lost Wages and Benefits

But for the discrimination she experienced, Ms. Lyles-Williams would still be employed at Lonza.  Since her constructive termination, Ms. Lyles-Williams has not found lasting employment in the biopharmaceutical industry.  We calculate her lost wages as follows:

2017:  The original position for which she applied, and was denied because of discrimination, would have paid her $130,000.  This is a difference from what she earned ($105,000) of **$25,000**.

2018:  Her employment with Lonza ended in September 2018.  She began working as a contract temporary employee at Jazz Pharmaceuticals in early October 2018.[1]  At present, there is no specific calculation of lost wages for the last two months of 2018.[2]

2019 – Ms. Lyles-Williams earned $94,595.22 in 2019 without medical benefits while working on a contract employee.  This contract ended in October 2019.  She had no income during this time.  This is lost wages of **$18,166.67**[3]

2020 – Covid hit in February/March 2020.  Her income for 2020 was only $20,743.  Her lost wages for 2020 of **$88,457**.[4]

2021 – Ms. Lyles-Williams has worked various part-time jobs (FedEx, Uber, and Turo) while attempting to create two or more start-up biopharmaceutical entities.  Her earnings for 2021 were only slightly higher.  She estimates as $20,000.  Her lost wages for 2021 are **$89,200**.

2022 – She has continued her start-up ventures while working the part-time positions.  Her earnings to date are approximately $25,000.  Her 2022 lost earnings to date are **$34,000**.[5]

For purposes of conciliation only, her claim for back pay/lost wages is **$254,823.67**

#### B.    Front Pay

Ms. Lyles-Williams worked for Lonza for fourteen (14) months.  Lonza is now on her professional resume.  She has to explain the circumstances of her separation.   This creates stress

---

[1] This position was a Senior Manager position for which Lonza claimed Ms. Lyles-Williams was not qualified.
[2] Ms. Lyles-Williams had lost wages during this timeframe.  The position at JAZZ did not include health benefits.  This will be claimed if this matter proceeds.
[3] See infra n. 4 identifying a monthly earning of $9083.33/month.
[4] This amount includes a single year COLA adjustment of 4% per year for earnings at Lonza for a yearly total of $109,200.  This amount does not include the value of health insurance.
[5] This is calculated using a yearly total of $109,200 which equals $9083.33/month.  Through the end of July 2022, she would have earned $63,583.33.  But has only earned $30,000 to date.

5

Lyles-Williams Conciliation Statement
Page 6 of 7
August 15, 2022

and anxiety that should not exist.  If she provides the truthful explanation (i.e., that she was discriminated against) it makes her less desirable in the job market.  If she omits Lonza from her employment history, she has a fourteen (14) month gap.  Her future ability to secure employment is less certain because of Lonza.

Front pay of at least two years is justified.  If this matter proceeds, our demand may be for more.  For purposes of conciliation only, we identify front pay of **$218,400.**

### C.     Compensatory Damages

Compensatory damages are an amount that a factfinder determines is reasonable and necessary to compensate Ms. Lyles-Williams for what she has endured.  This includes damages for costs associated with finding new employment, medical expenses, and to compensate her for the emotional harm suffered (such as mental anguish, inconvenience, and loss of enjoyment of life).

For purposes of conciliation only, we identify an amount of compensatory damages of **$200,000.**[6]

### D.     Punitive Damages

Lonza's failure to remediate the discrimination despite its knowledge that it was occurring potentially justifies punitive damages because it shows reckless indifference.  Such a failure is exactly what should *not* happen.

For purposes of conciliation only, we identify an amount of punitive damages of **$100,000**.[7]

### E.     Attorney's Fees

Ms. Lyles-Williams will be entitled to an award of attorney fees.  This will be separate and apart from her damages.  If this matter proceeds to trial, this could well exceed **$150,000**.

For purposes of conciliation only, Ms. Lyles-Williams includes a claim for fees of **$100,000**.

### F.     Costs and Interest

Costs and interest on a judgment are recoverable and estimated, roughly, as **$5,000.**

Totals:

| | |
|---|---|
| Back Pay/Lost Wages and Benefits | $254,823.67 |
| Front Pay | $218,400 |
| Compensatory Damages | $200,000 |

---

[6] Lonza has more than 500 employees.
[7] See supra n. 6.

Lyles-Williams Conciliation Statement
Page 7 of 7
August 15, 2022

|  |  |
|---|---|
| Punitive Damages | $100,000 |
| Attorney's Fees | $100,000 |
| Costs and Interest | $5,000 |
| TOTAL: | $878,223.67 |

### IV. Demand

For purposes of settlement only, Ms. Lyles-Williams's compromise demand is **$878,223.67**

        Respectfully Submitted,

        **TIA LYLES-WILLIAMS**

        By her attorneys,

    By:    */s/ John P. Sherman*
        John P. Sherman (Bar No. 12536)
        Sherman Law, Pllc
        111 Bow Street, Unit 2
        Portsmouth, NH 03801
        (603) 570-4837
        jsherman@johnshermanlaw.com

cc:    Client
       Counsel of record