UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
                                                  :
TIA LYLES-WILLIAMS                                :
                                                  :
                          Plaintiff,              :        Civil Action No. 1:22-cv-00323-LM
                                                  :
           v.                                     :
                                                  :
                                                  :
LONZA BIOLOGICS, INC.                             :
                                                  :
                          Defendant.              :
_____:

## DEFENDANT'S FIRST AMENDED COUNTERCLAIM

NOW COMES Defendant, Lonza Biologics, Inc. ("Lonza"), by and through its attorneys,

Bernstein Shur, Sawyer & Nelson, P.A., and asserts the following counterclaims against

Plaintiff, Tia Lyles-Williams ("Plaintiff" and "Lyles-Williams").

### COUNTERCLAIMS

1.      Lonza incorporates by reference its responses to Plaintiff's allegations in her

Charge and its Affirmative Defenses as though fully set forth at length.

### JURISDICTION AND VENUE

2.      As set forth in Lonza's removal papers (Docket No. 1) , this Court has subject

matter jurisdiction pursuant to 28 U.S.C. §1441 because the action could have been originally

filed in this Court under 28 U.S.C. §1332, in that the amount in controversy exceeds the sum of

$75,000 exclusive of interest and costs, and this is a civil action between citizens of different

states.

3.      Further, this Court has subject matter jurisdiction over Lonza's counterclaim pursuant to 28 U.S.C. §1367 because its counterclaim is so related to Plaintiff's claims that they form part of the same case or controversy.

4.      This Court has personal jurisdiction over Plaintiff because Plaintiff is a party in a proceeding pending before this Court, namely, the above-captioned matter.

5.      Venue is proper because the events giving rise to Lonza's counterclaim arose in this judicial district.

## FACTUAL BACKGROUND

6.      Lonza is a contract development and manufacturing organization that is one of the world's leading suppliers of biologics, cell and gene technologies to the biopharmaceutical and biotechnology industries.

7.      At its Portsmouth, New Hampshire facility (the "Portsmouth Facility"), where Lyles-Williams worked, Lonza specializes in commercial multi-product development and cGMP[1] manufacturing of mammalian biotherapeutics.  Mammalian biotherapeutics are custom proteins made of complex living mammal cells that are used to manufacture a number of different drug therapies for chronic and life-threatening diseases.

8.      On June 22, 2017, Lonza extended Lyles-Williams a written offer of employment (the "Offer") to work as a Manufacturing Supervisor at the Portsmouth Facility.  A true and correct copy of the Offer is attached hereto as **Exhibit A** and is incorporated herein by reference.

---

[1] Current Good Manufacturing Practices.

9.      At the time that Plaintiff was hired by Lonza, and in order to demonstrate Lonza's interest in hiring Plaintiff, Lonza's Offer to Lyles-Williams included a substantial relocation package to assist with her move from California to New Hampshire.

10.     Specifically, in the Offer, Lonza agreed to pay Ms. Lyles-Williams: (a) a signing-on bonus in the amount of $10,000 ("Bonus"); (b) a $10,000 relocation alternative ("Relocation Alternative") for interim living expenses; and (c) a 30-day living expense reimbursement (the "Relocation Assistance") (together, the Bonus, Relocation Alternative and Relocation Assistance are referred to as the "Signing Bonus").

11.     The Offer states that, if Plaintiff resigned "from the Company within twenty-four (24) months of your date of hire, you will be responsible for reimbursing the Company for the entire signing bonus." *See* Exhibit A, p.1.

12.     The Offer further states that Plaintiff would be required to repay the Relocation Alternative if Plaintiff resigned "from the Company within twenty-four (24) months of your date of hire."  *See* Exhibit A, p.2.

13.     Plaintiff signed the Offer agreeing to its terms on June 27, 2017.  *See* Exhibit A.

14.     Plaintiff commenced her employment with Lonza on or about July 31, 2017.

15.     On August 28, 2017, Lonza provided Plaintiff with a relocation agreement (the "Relocation Agreement"), a copy of which is attached hereto as **Exhibit B** and is incorporated herein by reference as though fully set forth at length herein.  Plaintiff signed the Relocation Agreement on September 1, 2017. *See* Exhibit B.

16.     In the Relocation Agreement, Plaintiff expressly agreed that, if she resigned from the Company within forty-eight (48) months of her date of hire, she would be responsible for

reimbursing the Company for the Relocation Assistance in accordance with Lonza's relocation policy. *See* Exhibit B.

17.    At all times relevant to this action, Lonza's relocation policy required the repayment of the Relocation Assistance in the event of Plaintiff's resignation within forty-eight (48) months of her date of hire.

18.    Lonza paid, and Ms. Lyles-Williams received, all elements of the Signing Bonus in an amount exceeding twenty-thousand dollars ($20,000).

19.    When she signed the Offer, Lyles-Williams also acknowledged that Lonza's willingness to employ her was expressly contingent upon her "execution of a Lonza Employee Non-Disclosure and Inventios Agreement (copy enclosed)…"  A true and correct copy of the Employee Non-Disclosure and Inventions Agreement ("Non-Disclosure Agreement") is attached hereto as **Exhibit C** and is incorporated herein by reference as though fully set forth at length herein.

20.    In the Non-Disclosure Agreement, Lonza made clear that it was "willing to hire, or if applicable, continue to employee [Plaintiff] only if [Plaintiff] agrees to the terms and conditions of this Agreement." *See* Exhibit C, § 1.  Lyles-Williams acknowledged this condition of her employment when she signed the Non-Disclosure Agreement.

21.    By signing the Non-Disclosure Agreement, Lyles-Williams also agreed that, during her employment, Lonza may disclose certain confidential, proprietary and trade secret information (collectively, "Confidential Information") to her and she agreed to use this Confidential Information "only for the purpose of performing [Plaintiff's] duties and shall not use the Confidential Information for [Plaintiff's own benefit or for the benefit of others." *See* Exhibit C, §§ 1, 2,2.

4

22.     Pursuant to the Non-Disclosure Agreement, Confidential Information includes, "all information and material received or generated by [Plaintiff] during [Plaintiff's employment with [Lonza], including but not limited to all ideas, suggestions, innovations, conceptions, discoveries, inventions, improvements, technological developments, methods, processes, specifications, formulae, compositions, techniques, systems, devices, computer software and programs, notes, memoranda, work sheets, lists of customers and suppliers, works of authorship, products, data, and information in any form, which concern or relate to any aspect of the actual or contemplated business of the Company…"  *See* Exhibit C, §2.1.

23.     In signing the Non-Disclosure Agreement and accepting Lonza's Offer, Employee further agreed "not to disclose or otherwise make available any of the Confidential Information to anyone outside of [Lonza] and its affiliated companies without the prior written consent of [Lonza]." *See* Exhibit C, § 2.3.

24.     Pursuant to Section 7 of the Non-Disclosure Agreement, Lyles-Williams also agreed that, "[u]pon the termination of Employee's employment, Employee will promptly return to [Lonza] all Confidential Information, security passes, identification badges and all other property of [Lonza]."  *See* Exhibit C, § 7.

25.     By signing the Non-Disclosure Agreement, Lyles-Williams therefore acknowledged that she was aware that she had a duty to maintain the secrecy of all of the Confidential Information that she received and accessed while an employee of Lonza, and that she was obligated to return all Confidential Information upon the termination of her employment.

26.     As a contract development manufacturing organization, Lonza relies on its Confidential Information in order to conduct its business and this information possesses

independent economic value and is not readily ascertainable by Lonza's competitors in the biologics manufacturing industry.

27.     It is vital to Lonza's legitimate business interests to protect access to its Confidential Information, and to protect the customer and business goodwill developed by Lonza.

28.     Given the highly-competitive nature of biologics manufacturing, and recognizing the value of its Confidential Information, Lonza undertook reasonable efforts under the circumstances to maintain the secrecy of both the information that it entrusted to Lyles-Williams during her employment and the information that she wrongfully accessed and copied, including, but not limited to the following:

a.   Lonza maintains hard copies of Confidential Information in locked file cabinets, to which only authorized employees have access.

b.   Lonza instructs employees at the time of their hire about Lonza's policies restricting access to files containing Confidential Information and the importance of preserving the strict confidentiality of this material throughout their Lonza employment.

c.   Lonza provides regular, ongoing reminders to employees about the need to protect Confidential Information through training modules and other notices.  This includes policies against nondisclosure of confidential business information set forth in Lonza's Employee Handbook.

d.   Lonza limits access to its manufacturing facilities and sites so that Confidential Information is not observed by individuals who are not subject to a strict duty of confidentiality.

e.    Lonza requires all employees to enter into agreements similar to Plaintiff's Non-Disclosure Agreement to confirm the need to protect Confidential Information from improper use and disclosure.

f.    Confidential Information is also stored by Lonza on its company servers and computers, which are password protected to ensure that only authorized employees can gain access to this electronic information.

g.    Lonza performs information technology ("IT") investigations to gather and preserve facts associated with IT incidents. IT investigations may include a forensic analysis of IT assets including but not limited to user-provided IT equipment such as laptops, desktops and cell phones.

h.    Lonza uses automated software tools to perform vulnerability scans on user provided endpoints such as laptops and desktops and performs regular vulnerability scans on servers.

i.    Lonza contracts with IT professional companies to perform persistent penetration testing of Lonza assets, including systems, networks and endpoints.

j.    Lonza utilizes data loss prevention ("DLP") tools and processes to ensure that sensitive data is not lost, misused, or accessed by unauthorized users.  DLP software is deployed on Lonza endpoints and is used to monitor regulated, confidential and business critical data and identify violations of policies defined by Lonza.

k.    Lonza blocks unauthorized removable media such as USB devices on end user laptops.  Lonza also requires any USB device that is needed for business operations to provide complex encryption.

l.    Lonza uses managed services to monitor and evaluate DLP alerts.

29.     During her employment with Lonza, Lyles-Williams regularly accessed and maintained Confidential Information on her company-issued laptop and this laptop was also password-protected by Lonza to protect against unauthorized use and disclosure.

30.     As part of Lyles-Williams' duties as Manufacturing Supervisor for Lonza, she worked as a technical representative on a project team that was responsible for building a new manufacturing plant at the Portsmouth Facility (the "New Facility"). In this role, Lyles-Williams was regularly given access to sensitive, proprietary business information regarding this New Facility, as well as to the manufacturing operations in other Lonza manufacturing facilities in Portsmouth.

31.     The Confidential Information about the New Facility that Plaintiff  had access to included, but was not limited to detailed design plans, capital expenditure protocols and processes, allocation of raw materials, batch pricing, labor cost planning and scheduling, standard operating procedures, parameters for specific manufacturing processes as well as information regarding development and a manufacturing agreement with an existing Lonza customer.  This Confidential Information would be of tremendous value to Lonza's competitors, and which provide Lonza with a competitive advantage.

32.     As Lonza has only recently discovered during discovery in this case, once Plaintiff decided to resign her Lonza employment in order to start her own contract manufacturing organization, she intentionally and improperly accessed numerous files containing Lonza Confidential Information in order to download and copy them from Lonza's servers onto her own computer and/or external hard drives.  This included Confidential Information outside the scope of her normal work activities that she had no known need to access. For example, Plaintiff copied the following from Lonza's servers: (a) a detailed manufacturing services

8

agreement from 2014 between Lonza and a key customer with whom Plaintiff had no

responsibility during her employment; (b) personnel records for other Lonza employees; and (c)

disciplinary records relating to other Lonza employees.

33.    Additionally, Plaintiff accessed and copied from Lonza servers numerous other

files containing Confidential Information that related to the New Facility project including: (a)

spreadsheets calculating the multi-year planning needs and allocation of raw materials and labor

costs for the New Facility; (b) a manufacturing schedule for the existing manufacturing

operations for existing Lonza customers at the Portsmouth Facility; (c) information relating to

batch prices and planned batch price increases for existing Lonza customers; (d) a project design

plan prepared for the build-out of the new manufacturing facility that contained the detailed

design plans for the new facility; (e) Lonza's standard operating procedure for capital

expenditure projects that describes the project-pricing for building projects like the new facility.;

(f) project schematics for the build-out of the New Facility, including process-flow diagrams for

planned cell lines; (g) manufacturing parameters for existing manufacturing suites; (h) a

manufacturing run schedule describing the specific tasks and allocation of time needed to set up

and operate the New Facility; (i) user requirements specifications for specific manufacturing

operations to ensure alignment with Lonza manufacturing specifications; (j) proposal for the

automation strategy and software integration for the New Facility; and (k) gross profit

projections for the New Facility based on multi-year  models for labor costs.

34.    Moreover, in addition to copying these confidential and highly proprietary files,

Lonza also discovered that Plaintiff took photographs of highly sensitive manufacturing

operations, including pictures of a bioprocess room, in-use equipment and ongoing

manufacturing spaces where access is restricted, and photography is not permitted.

35.     Upon information and belief, Plaintiff copied other documents which she then deleted from Lonza servers and computers and, as such, the full scope of Lyles-Williams' access and use of such Confidential Information remains unknown.

36.     Commencing on August 1, 2018 while she was still employed by Lonza, and immediately following her resignation, Plaintiff began working for LucasPye BIO, LLC ("LucasPye"), a contract development manufacturing organization she established to manufacture biologics products in the form of bulk drug substances ("BDS").  According to public statements made by Lyles-Williams, its Chief Executive Officer on social media on August 1, 2018, LucasPye BIO's operations "will include BDS manufacturing for mammalian cell lines…" Plaintiff was, at this time, already working to establish a business that would compete with Lonza.

37.     On September 13, 2018, Plaintiff tendered her resignation of employment with Lonza.  On September 21, 2018, Plaintiff's last day, she advised the entire Portsmouth site by email that she was leaving "to pursue employment opportunities that are in alignment with my career goals."

38.     Lonza conducted its exit interview with Plaintiff on September 21, 2018.  During that interview, Lonza reminded Plaintiff of her obligation to repay all elements of the Signing Bonus.

39.     During the exit interview, Plaintiff expressly refused to pay any portion of the Signing Bonus. To date, Plaintiff has failed and refused to repay any portion of the Signing Bonus.

40.    Four days after leaving her Lonza employment, Plaintiff attended a prominent industry conference of the International Society for Pharmaceutical Engineering in Boston on behalf of LucasPye.

41.    In direct violation of her Non-Disclosure Agreement, upon her termination of employment Lyles-Williams also improperly retained and failed to return Lonza property, including the Confidential Information, when she resigned her Lonza employment.  She further did not disclose that she had copied hundreds of pages of Lonza Confidential Information from Lonza servers onto personal, external hard drives. Finally, Plaintiff did not secure Lonza's consent before copying those documents and taking them with her following her resignation.

42.    On or about January 29, 2019, Plaintiff commenced this action by filing her charge of discrimination on the basis of race, color, sex and age as well as retaliation in violation of Title VII of the Civil Rights Act of 1964,  42 U.S.C. § 2000e *et seq*, as amended, together with pendent state claims under The New Hampshire's Law Against Discrimination, RSA 354-A. The Action was removed to this Court on August 23, 2022 (Docket No. 1) and the Court approved the parties' Joint Discovery Plan (Docket No. 9) on October 18, 2022.

43.    According to the Joint Discovery Plan, the deadline to amend pleadings was January 15, 2023 and the discovery cut-off is March 1, 2024.

**COUNT I**
**BREACH OF CONTRACT**
**(OFFER LETTER AND RELOCATION AGREEMENT)**

44.    Lonza re-alleges and incorporates by reference its responses to Plaintiff's allegations paragraphs 1-43 above as though fully set forth at length.

45.    The Offer Letter and the Relocation Agreement constitute a valid and binding contract between Lonza and Lyles-Williams.

11

46.    Lonza performed each of its material obligations under the Offer Letter and Relocation Agreement by providing Lyles-Williams all elements of the Signing Bonus.

47.    Lyles-Williams materially breached the Offer Letter and the Relocation Agreement by failing and refusing to repay Lonza after voluntarily resigning her employment within less than twenty-four (24) months of her date of hire.

48.    As a direct and proximate result of Plaintiff's material breach of the Offer Letter and the Relocation Agreement, Lonza has suffered damages in an amount exceeding $20,000, such total amount to be determined at trial.

WHEREFORE, Defendant and Counterclaim Plaintiff, Lonza Biologics, Inc., hereby demands judgment in its favor and against Plaintiff and Counterclaim Defendant, Tia Lyles-Williams and seeks damages in an amount exceeding $20,000, plus interest and such other relief as this Court deems just and appropriate.

### COUNT II
### BREACH OF CONTRACT
### (NON-DISCLOSURE AGREEMENT)

49.    Lonza re-alleges and incorporates by reference its responses to Plaintiff's allegations paragraphs 1-48 above as though fully set forth at length.

50.    The Non-Disclosure Agreement constitutes a valid and enforceable contract between Lonza and Lyles-Williams.

51.    During Lyles-Williams' employment Lonza performed each of its material obligations under the Non-Disclosure Agreement by providing Lyles-Williams with access to Confidential Information during her employment for her legitimate use on behalf of and in furtherance of her duties for Lonza.

52.     Lyles-Williams materially breached the Non-Disclosure Agreement by accessing, improperly retaining and using Lonza Confidential Information without Lonza's consent.

53.     Lyles-Williams materially breached the Non-Disclosure Agreement by failing to return all Confidential Information to Lonza upon her resignation.

54.     As a direct and proximate result of Plaintiff's material breach of Non-Disclosure Agreement, Lonza has suffered damages in an amount to be determined at trial.

WHEREFORE, Defendant and Counterclaim Plaintiff, Lonza Biologics, Inc., hereby demands judgment in its favor and against Plaintiff and Counterclaim Defendant, Tia Lyles-Williams and seeks actual damages, plus interest and such other relief as this Court deems just and appropriate.

### COUNT III
### MISAPPROPRIATION OF TRADE SECRETS
### (NH RSA 350-B)

55.     Lonza re-alleges and incorporates by reference its responses to Plaintiff's allegations paragraphs 1-54 above as though fully set forth at length.

56.     Lonza's Confidential Information as described herein constitutes protectable trade secrets under NH RSA Chapter 350-B.

57.     At all relevant times, Lonza undertook efforts that were reasonable under the circumstances to maintain the secrecy of its Confidential Information.

58.     Upon information and belief, Lyles-Williams misappropriated Lonza's trade secrets to use these trade secrets to accelerate her plans to establish her own competing contract development manufacturing organization and to build her own manufacturing facility to compete with and gain an unfair advantage over Lonza. Such actual misappropriation was, and upon information and belief, is being done willfully and maliciously.

13

59.     Lyles-Williams improperly accessed and copied the trade secrets through a breach of the confidence and trust that Lonza gave to Lyles-Williams during her employment. Through her actions, Lyles-Williams accessed, copied and retained the trade secrets in a manner designed to keep her actions secret from Lonza and were therefore acquired and retained through improper means.

60.     Lyles-Williams improperly accessed and retained Lonza's trade secrets while under a duty owed to Lonza, as confirmed in the Non-Disclosure Agreement, to maintain their secrecy and limit their use.

61.     As Lyles-Williams is currently engaged in competitive activities, her misappropriation poses an immediate threat of irreparable harm to Lonza.

62.     As a result, Lonza is entitled to injunctive relief, equitable relief, actual damages, direct and consequential damages, statutory damages and exemplary damages, including double damages pursuant to RSA Chapter 350-B, costs and expenses, including attorneys' fees and interest, all of which are within the jurisdictional limits of this Court.

63.     As a result, Lonza is entitled to an order compelling Lyles-Wiliams to account for all revenues and profits wrongfully obtained, and for the disgorgement of any amount by which Lyles-Williams has been unjustly enriched, including all revenue and/or profits obtained.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §1836 et. seq.)**

64.     Lonza re-alleges and incorporates by reference its responses to Plaintiff's allegations paragraphs 1-63 above as though fully set forth at length.

65.     The DTSA specifically allows a private right of action for misappropriation of trade secrets.

66.    Lonza is the sole and rightful owner of the Confidential Information, which constitutes protectable trade secrets as defined in the DTSA, and which were willfully misappropriated by Lyles-Williams.

67.    At all relevant times, Lonza undertook reasonable efforts under the circumstances to maintain the information's secrecy.

68.    Upon information and belief, Lyles-Williams misappropriated Lonza's Confidential Information to accelerate her plans to build her own manufacturing facility to compete with and gain an unfair advantage over Lonza. Such actual misappropriation was, and upon information and belief, is being done willfully and maliciously.

69.    Lyles-Williams improperly accessed and copied the Confidential Information through means constituting a breach of the confidence and trust that Lonza gave to Lyles-Williams during her employment.  Through her actions, Lyles-Williams accessed, copied and retained the Confidential Information in a manner designed to keep her actions secret from Lonza and they were therefore acquired and retained through improper means.

70.    Lyles-Williams improperly accessed and retained the Confidential Information while under a duty owed to Lonza, as confirmed in the Non-Disclosure Agreement, to maintain their secrecy and limit their use.

71.    As Lyles-Williams is currently engaged in competitive activities, her misappropriation poses an immediate threat of immediate and irreparable harm to Lonza.

72.    As a result, Lonza is entitled to preliminary and permanent injunctive relief, equitable relief, actual damages, direct and consequential damages, statutory damages and exemplary damages, costs and expenses, including attorneys' fees and interest, all of which are within the jurisdictional limits of this Court.

73.    As a direct and proximate result of Lyles-Williams' misappropriation of Lonza's Confidential Information, Lonza has suffered damages in an amount yet to be determined and for which Lonza is entitled to recovery.

74.    As a result, Lonza is entitled to an order compelling Lyles-Wiliams to account for all revenues and profits wrongfully obtained, and for the disgorgement of any amount by which Lyles-Williams has been unjustly enriched, including all revenue and/or profits obtained.

75.    Lonza is further entitled to an award of exemplary damages from Lyles-Williams in such amount as is necessary to punish Lyles-Williams and to deter her from commission of similar actions, in addition to reasonable attorneys' fees pursuant to the DTSA.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant Lonza Biologics, Inc. respectfully requests entry of judgment in favor of Lonza and against Plaintiff and Counterclaim-Defendant, Tia Lyles-Williams:

1.    Dismissing Plaintiff's Complaint and all claims and causes of action therein with prejudice;

2.    Awarding Lonza actual, statutory and exemplary damages against Lyles-Williams in an amount to be proven at trial;

3.    Awarding Lonza actual, statutory and exemplary damages, including double damages under Rev. Stat. Ann. Chapter 350-B;

4.    Awarding Lonza costs and attorneys' fees under Rev. Stat. Ann. Chapter 350-B;

5.    Ordering Lyles-Williams to account for any revenue and profits wrongfully obtained and to be disgorged to Lonza;

6.      Awarding Lonza actual, statutory, exemplary damages and attorneys' fees under the DTSA;

7.      Awarding pre-judgment and post-judgment interest on all amounts owed;

8.      Awarding Lonza costs of bringing these Counterclaims;

9.      Awarding all such other relief at law or in equity, that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Defendant herein asserts its right to a jury trial on all issues triable thereto.


                                   Respectfully Submitted,
                                   LONZA BIOLOGICS, INC.
                                   By its attorneys,
                                   BERNSTEIN SHUR, SAWYER & NELSON, P.A.

Date: November 9, 2023

                                    */s/ Edward J. Sackman*
                                   Edward J. Sackman, N.H. Bar # 19586
                                   670 N. Commercial Street, Suite 108
                                   P.O. Box 1120
                                   Manchester, NH 03105
                                   nsackman@bernsteinshur.com
                                   (603) 623-8700



Date:  November 9, 2023            */s/ Janeen Olsen Dougherty*
                                   Grey Street Legal, LLC
                                   356 N. Pottstown Pike, Suite 200
                                   Exton, Pennsylvania 19341
                                   (610) 594-4737
                                   Janeen.dougherty@greystreetlegal.com

17

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that copies of the foregoing were this day served via ECF upon the following:

> J. Conor Corcoran, Esquire
> Law Office of J. Conor Corcoran, P.C.
> 2601 Pennsylvania Avenue
> Suite 501
> Philadelphia, PA 19130
> conor@jsesq.com
>
> Jared Joseph Bedrick, Esquire
> Champions Law
> 170 West Road
> Suite 6d
> Portsmouth, NH 03801
> jared@champions.law

Date:  November 9, 2023    By:  *<u>/s/ Janeen Olsen Dougherty, Esq.</u>*
                Janeen Olsen Dougherty, Esquire